Scates, Justice, delivered the opinion of the court: [* 354] The plaintiff was indicted for unlawfully and willfully harboring a negro woman named Sarah, she then and there being a slavé, and owing service to one Andrew Borders, he then and there being a resident of Randolph county. The second count charged him with unlawfully and willfully harboring a negro woman named Sarah, she then being an indentured servant, and owing service to Andrew Borders, a resident of the same county. There was a motion to quash the indictment, made before trial, which was overruled. Issue was joined upon the plea of not guilty, and a verdict of guilty rendered on the second count of the indictment. A motion was made for a new trial and denied. The bill of exceptions shows that an indenture between Sarah and Wm. Padon was entered into on the 13th of December, 1815, before John Hay, clerk of the court of common pleas of St. Clair county, to serve forty years, and attested by R. K. McLaughlin and Wm, Padfield, was offered to the jury in evidence, after proving the death and hand writing of John Hay; that the defendant objected, but his objection was overruled, and the indenture read in evidence. . The prosecution also offered in evidence a certain assignment of said indenture, made by Wm. Padon, the master, to Wm. H. Bradsby, made with the consent of Sarah, before John Hay, a justice of the peace of St. Clair county, after proving the hand writing of John Hay to the certificate of acknowledgement; to which objection was made and overruled, and the same was read. A similar assignment by Bradsby to E. K. Kane, and -by Kane to Andrew Borders, after proving the hand writing of the justices of the peace, before whom they were acknowledged and. made, to the certificates of such acknowledgement, were also offered in evidence, which were in like manner objected to, and the objection overruled, and the assignments read in evidence. The prosecution then called Andrew Borders as a witness, and asked him if Sarah had been living with him as an indentured servant, since she was assigned to him. To this question objection was made, which was overruled ; and the witness testified that Sarah had been living with him, as an indentured servant, since she was assigned to liim in 1825, and until 1841, when she left. This was all the evidence as to the said Sarah being a slave or indentured servant. These decisions are assigned for error, severally, as well as the Overruling the motions to quash, and for a new trial, and rendering judgment against the defendant, upon a verdict which found him guilty on the second count, without acquitting him on the first count. This is purely a statutory offence, and the indictment is in the language of the,act, except that it adds to the [* 355] charge, that it was unlawfully and willfully done; and an indictment so drawn, and so plainly that “the nature of the of-fence may be easily understood by the jury,” has been sustained under our statute. 3 Scam. 476. Having made the charge in the language of the act, we understand the prosecution as undertaking to prove the facts charged, and with that knowledge necessary to constitute a misdemeanor. It has been held in North Carolina, that the word “ harboring” had a legal, definite meaning of “ fraudulent concealment.” Law of Slavery 443, citing Dark v. Marsh, 2 N. Carolina Law Repository 249, July Term, 1815; 1 Bouvier’s Law Dict. 460, words “ To harbor,” where the definition is given. If we adopt this meaning of the term, as used in our state,it would still be unnecessary to aver a,emente?'in charging such a statutory offence. I think the indictment good as to this objection. The other objection on the motion to quash, that it averred the existence of slavery here, which cannot be under the constitution of this state, I think equally untenable; and the reasons will be found more at large, in the case of Sarah v. Borders., ante 345, and Willard v. The People, post, decided at this term. The motion to quash was therefore correctly denied. As a general rule it is well settled, that upon an examination of a witness in chief, the party calling him has no right to put leading questions. See 1 Phil. Ev., Cowen and Hill’s Notes, 268-9; 2 Phil. Ev. 722 to 724, Notes 502 to 506 inclusive. There the rule is laid down, and some exceptions to it; as that, in the discretion of the court, leading questions may be put to an unwilling witness; and upon introductory matter, as mere inducement to, or explanatory of the relative evidence; or for the purpose of identifying a person, a witness may be asked if a person in court, or the prisoner at the bar, is that person. I cannot understand even the relevancy of this question," unless it was to identify the woman Sarah mentioned in the indictment, with the vvoman Sarah mentioned in the indenture read. If for that purpose, it might be leading, though not very well calculated to identify. If for the purpose of showing that she was indentured, it was inadmissible; because the indenture itself was higher and better evidence. I regard it in the former light, and therefore admissible. If the clerk of the court of common pleas, before whom the indenture purported to be entered into, had affixed to his attestation the seal of said court, no proof would have been necessary to entitle the indenture to have been read. Proving the death and hand writing of the clerk was not sufficient. He did not subscribe it as a witness. The law required that the indenture should be entered into before him, as an officer, and acknowledged before him as such. [* 356] It was necessary, therefore, to prove that John Hay was - clerk, by some competent testimony, there being no seal of office to his attestation. By the 15th section of the act of the territorial legislature, in 1807, (Territorial Law 313,) organizing the courts of common pleas, the Governor was authorized to appoint clerks of said courts. Now a certificate from the office of the Secretary of State, of his appointment, or a certificate from the proper court, now in possession of the records and proceedings of the old courts of common pleas, would be proper evidence of his official character. In relation to the assignments, which, by the act of 1807, (Territorial Laws 607,) were to be made before some justice of the peace, who was required to attest the same in writing. The circuit court will judicially notice who are, and the official acts of justices of the peace, certified by them, when sitting in the county of which they are justices; but when the official acts of justices of a foreign county are offered in evidence, they should be.accompanied by certificate, from the proper officer, of his official character. It was error to admit them. It is also assigned as error, that the court rendered judgment against the defendant, upon a defective finding of the jury. This question has already received the consideration of this court, in an analogous case, (Stoltz v. The People, ante 168; 3 Scam 487, 582; and see Ibid. 329,) where the verdict was held sufficient. If it be such a finding and judgment as he can plead in bar of another indictment for the same act, it willafford all the protection which the law intends or he can ask. We think it is; and the court should have pronounced a judgment of acquittal on the first count, on that verdict, which we think an acquittal on that count. It is the opinion of the court that the judgment be reversed, and the cause remanded, with instructions to the court' below to award a venire de novo.